**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| PUBLIC CITIZEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF HEALTH AND | ) |
| HUMAN SERVICES, | )   Civil Action No. 11-1681 |
| | )   Judge Beryl A. Howell |
| Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| PFIZER INC. and PURDUE PHARMA | ) |
| L.P., | ) |
| | ) |
| Defendant-Intervenors. | ) |

_____)

### DECLARATION OF JULIE A. MURRAY

I, Julie A. Murray, declare as follows:

1.      I am counsel for plaintiff Public Citizen in the above-captioned case.  I have personal knowledge of the facts stated herein.

2.      In response to Public Citizen's FOIA request at issue in this case, defendant Department of Health and Human Services (HHS) disclosed a Pfizer-submitted record indicating that, by 2006, the federal government was Pfizer's "largest customer, accounting for approximately 45% of U.S. sales."  Attached as Attachment A is a true and correct copy of the relevant excerpt of that record.  For the Court's convenience, a complete copy of this record has been posted at http://www.citizen.org/PCvHHS-Pfizer-Purdue-Corp-Integrity-Agreements.

3.      The HHS Office of Inspector General (OIG) maintains a web page that provides general information about Corporate Integrity Agreements (CIAs).  Attached as Attachment B is a true and correct copy, as of May 30, 2012, of that web page, which is also available at http://oig.hhs.gov/compliance/corporate-integrity-agreements/index.asp.

4.      OIG provides on its website copies of CIAs with various entities, including pharmaceutical companies.  Attached as Attachment C are true and correct copies obtained from OIG's website of excerpts of CIAs between OIG and (1) Abbott Laboratories, (2) Allergen, Inc., (3) Bristol-Myers Squibb, and (4) Eli-Lilly and Company.  Each of these documents contains two sections addressing how information submitted to OIG by the company pursuant to a CIA will be treated for FOIA purposes.  These documents are available in full on OIG's website at http://oig.hhs.gov/compliance/corporate-integrity-agreements/cia-documents.asp.

5.      In response to the FOIA request at issue in this case, HHS disclosed redacted portions of certain records that refer to Ineligible Persons.  Attached as Attachment D are true and correct copies of some of these records, which have also been posted at http://www.citizen.org/PCvHHS-Pfizer-Purdue-Corp-Integrity-Agreements.

6.      In response to the FOIA request at issue in this case, HHS disclosed a record that reflects a transmittal memorandum and supplement to Purdue's First Annual Report.  Attached as Attachment E is a true and correct copy of that record, which has also been posted at http://www.citizen.org/PCvHHS-Pfizer-Purdue-Corp-Integrity-Agreements.

7.      In response to the FOIA request at issue in this case, HHS disclosed redacted letters relating to Pfizer's IRO Reports.  These letters appear to memorialize an agreement between OIG and Pfizer with respect to the scope of Pfizer's IRO reviews.  Attached as

Attachment F are true and correct copies of those letters, which have also been posted at http://www.citizen.org/PCvHHS-Pfizer-Purdue-Corp-Integrity-Agreements.

8.      In response to the FOIA request at issue in this case, HHS disclosed a letter from OIG to Pfizer regarding the application of FOIA to Pfizer submissions pursuant to a 2002 CIA that Pfizer had with OIG.  Attached as Attachment G is a true and correct copy of that letter, which has been posted at http://www.citizen.org/PCvHHS-Pfizer-Purdue-Corp-Integrity-Agreements.

9.      In response to the FOIA request at issue in this case, HHS disclosed records from Pfizer that refer to Pfizer's submission of responses to IRO reports and corrective action plans. In these documents, Pfizer indicated that it intended to provide OIG with such information under separate cover (or that in some cases Pfizer might submit such information in the IRO reports themselves) and at a later date.  Attached as Attachment H are true and correct copies of these records, which have been posted at http://www.citizen.org/PCvHHS-Pfizer-Purdue-Corp-Integrity-Agreements.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.

Executed May 31, 2012, in Washington, DC.


/s/  Julie A. Murray
Julie A. Murray

Exh. 3, Attach. A

## The Stakes...
- More Bad Press.
- Huge Fines.
- (In)Voluntary Suspension of Programs.
- Impaired Ability to Compete.
- Individual and/or Corporate Prosecution.
- Years of Government Oversight (CIA).
- Possible "Federal Program Exclusion"

## Mandatory Exclusion
42 USC Sec. 1320a-7a(3)

Impact of Exclusion: Huge

- By 2006, the Federal Government will be Pfizer's largest customer, accounting for approximately 45% of US sales.

## Neurontin Settlement
- **$430 million penalty** plus a 5 year "**Corporate Integrity Agreement**" (CIA) with the Inspector General of HHS.
- Specific Compliance obligations (mandatory training, reporting, **independent audits**, etc.).
- Covers systems, processes, policies and practices relating to the Medicaid rebate program, managed care contracting, and all USP sales, marketing, and product services activities ... .

3

CONFIDENTIAL AND FOIA EXEMPT

Exh. 3, Attach. B

Change Font Size Skip to Navigation

- Exclusions
- Fraud
- Compliance
- Newsroom
- Reports/Pubs
- Recovery
- About OIG

# Corporate Integrity Agreements

## Related

- Corporate Integrity Agreement Documents
- Corporate Integrity Agreement FAQs
- Quality of Care CIAs
- OIG Guidance on IRO Independence and Objectivity (PDF)

OIG negotiates corporate integrity agreements (CIA) with health care providers and other entities as part of the settlement of Federal health care program investigations arising under a variety of civil false claims statutes. Providers or entities agree to the obligations, and in exchange, OIG agrees not to seek their exclusion from participation in Medicare, Medicaid, or other Federal health care programs.

CIAs have many common elements, but each one addresses the specific facts at issue and often attempts to accommodate and recognize many of the elements of preexisting voluntary compliance programs. A comprehensive CIA typically lasts 5 years and includes requirements to:

- hire a compliance officer/appoint a compliance committee;
- develop written standards and policies;
- implement a comprehensive employee training program;
- retain an independent review organization to conduct annual reviews;
- establish a confidential disclosure program;
- restrict employment of ineligible persons;
- report overpayments, reportable events, and ongoing investigations/legal proceedings; and
- provide an implementation report and annual reports to OIG on the status of the entity's compliance activities.

Adobe® Acrobat® ⁔ is required to read PDF files.

Exh. 3, Attach. C

## CORPORATE INTEGRITY AGREEMENT
### BETWEEN THE
### OFFICE OF INSPECTOR GENERAL
#### OF THE
### DEPARTMENT OF HEALTH AND HUMAN SERVICES
#### AND
### ABBOTT LABORATORIES

## I.   PREAMBLE

Abbott Laboratories (Abbott) hereby enters into this Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements) and with the statutes, regulations, and written directives of the Food and Drug Administration (FDA requirements).

Contemporaneously with this CIA, Abbott is entering into a Settlement Agreement and a Plea Agreement with the United States. Abbott will also enter into settlement agreements with various States (State Settlement Agreement) and Abbott's agreement to this CIA is a condition precedent to those agreements.

Among other services, Abbott currently markets, promotes and sells human pharmaceutical products that are reimbursed by Federal health care programs in the United States through its U.S. Pharmaceutical Products Group (PPG). Abbott has publicly announced and represented to the OIG that it plans to separate into two, publicly-traded companies: one a diversified medical products company, which may retain the Abbott name (Diversified Company); and the other a research-based human pharmaceuticals company (Pharmaceutical Company), which will not be a subsidiary or corporate affiliate of Abbott. This separation is hereinafter referred to as the "Transaction." Abbott also has represented to the OIG that at the effective date and time of the Transaction (Effective Time), the assets of Abbott's research-based human pharmaceuticals products business will be transferred, conveyed and/or assigned by Abbott to the Pharmaceutical Company and that the Diversified Company shall no longer be involved in the marketing or promotion of research-based human pharmaceutical products in the United States.

Abbott Laboratories
Corporate Integrity Agreement

2.  he or she has reviewed the report and has made reasonable inquiry regarding its content and believes that the information in the report is accurate and truthful;

3.  Abbott's:  1) Policies and Procedures as referenced in Section III.B.3 above; 2) templates for standardized contracts and other similar documents; and 3) the training materials used for purposes of Section III.C all have been reviewed by competent legal counsel and have been found to be in compliance with all applicable Federal health care program and FDA requirements.  In addition, to the best of his or her knowledge, Abbott's promotional materials containing claims or information about Government Reimbursed Products and other materials and information intended to be disseminated outside Abbott have been reviewed by competent regulatory, medical, or, as appropriate, legal counsel in accordance with applicable Policies and Procedures to ensure that legal, medical, and regulatory concerns have been addressed by Abbott and brought to the attention of the appropriate individuals when required, and that the materials and information when finally approved are in compliance with all applicable Federal health care program and FDA requirements.  If the applicable legal requirements have not changed, after the initial review of the documents listed above, only material changes to the documents must be reviewed by competent regulatory, medical and/or legal counsel. The certification shall include a description of the document(s) reviewed and approximately when the review was completed.  The documentation supporting this certification shall be available to OIG, upon request; and

4.  Abbott's call plans for Government Reimbursed Products were reviewed at least once during the Reporting Period (consistent with Section III.B.3.g) and, for each product the call plans were found to be consistent with Abbott's policy objectives as referenced above in Section III.B.3.g.

D.  <u>Designation of Information</u>.  Abbott shall clearly identify any portions of its submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Abbott shall refrain from identifying any information as exempt from disclosure if that information does not meet the criteria for exemption from disclosure under FOIA.

## VI.  NOTIFICATIONS AND SUBMISSION OF REPORTS

Abbott Laboratories
Corporate Integrity Agreement

50

Unless otherwise stated in writing after the Effective Date, all notifications and reports required under this CIA shall be submitted to the following entities:

OIG:      Administrative and Civil Remedies Branch
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services
Cohen Building, Room 5527
330 Independence Avenue, S.W.
Washington, DC  20201
Telephone:  202.619.2078
Facsimile:  202.205.0604

Abbott:    Robert Funck
Chief Ethics and Compliance Officer
Abbott Laboratories
Dept. 036X, Bldg. AP6C-1
100 Abbott Park Road
Abbott Park, IL  60064
Telephone:  847.937.1231
Facsimile:  847.938.1957

Unless otherwise specified, all notifications and reports required by this CIA may be made by certified mail, overnight mail, hand delivery, or other means, provided that there is proof that such notification was received.  For purposes of this requirement, internal facsimile confirmation sheets do not constitute proof of receipt.  Upon request by OIG, Abbott may be required to provide OIG with an electronic copy of each notification or report required by this CIA in searchable portable document format (pdf), either instead of or in addition to, a paper copy.

## VII.   OIG INSPECTION, AUDIT, AND REVIEW RIGHTS

In addition to any other rights OIG may have by statute, regulation, or contract, OIG or its duly authorized representative(s) may examine or request copies of Abbott's books, records, and other documents and supporting materials and/or conduct on-site reviews of any of Abbott's locations for the purpose of verifying and evaluating:  (a) Abbott's compliance with the terms of this CIA; and (b) Abbott's compliance with the

Abbott Laboratories
Corporate Integrity Agreement

51

requirements of the Federal health care programs in which it participates and with all applicable FDA requirements. The documentation described above shall be made available by Abbott to OIG or its duly authorized representative(s) at all reasonable times for inspection, audit, or reproduction. Furthermore, for purposes of this provision, OIG or its duly authorized representative(s) may interview any of Abbott's employees, contractors, or agents who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon between the individual and OIG. Abbott shall assist OIG or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG's request. Abbott's employees may elect to be interviewed with or without a representative of Abbott present.

## VIII.  DOCUMENT AND RECORD RETENTION

Abbott shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs and to compliance with this CIA for six years (or longer if otherwise required by law) from the Effective Date.

## IX.  DISCLOSURES

Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify Abbott prior to any release by OIG of information submitted by Abbott pursuant to its obligations under this CIA and identified upon submission by Abbott as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules. With respect to such releases, Abbott shall have the rights set forth at 45 C.F.R. § 5.65(d).

## X.  BREACH AND DEFAULT PROVISIONS

Abbott is expected to fully and timely comply with all of its CIA obligations.

A.  Stipulated Penalties for Failure to Comply with Certain Obligations. As a contractual remedy, Abbott and OIG hereby agree that failure to comply with certain obligations as set forth in this CIA may lead to the imposition of the following monetary penalties (hereinafter referred to as "Stipulated Penalties") in accordance with the following provisions.

1.  A Stipulated Penalty of $2,500 (which shall begin to accrue on the day

Abbott Laboratories
Corporate Integrity Agreement

52

# CORPORATE INTEGRITY AGREEMENT
### BETWEEN THE
### OFFICE OF INSPECTOR GENERAL
### OF THE
### DEPARTMENT OF HEALTH AND HUMAN SERVICES
### AND
### ALLERGAN, INC.

## I.   PREAMBLE

Allergan, Inc. (Allergan) hereby enters into this Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements) and with the statutes, regulations, and written directives of the Food and Drug Administration (FDA requirements).  Contemporaneously with this CIA, Allergan is entering into a Settlement Agreement with the United States.  Allergan will also enter into settlement agreements with various States (State Settlement Agreements) and Allergan's agreement to this CIA is a condition precedent to those agreements.

Prior to the Effective Date, Allergan established a voluntary compliance program (Compliance Program) and initiated certain voluntary compliance measures.  Allergan shall continue its Compliance Program throughout the term of the CIA and shall do so in accordance with the terms set forth below.  Allergan may modify its Compliance Program, as appropriate, but at a minimum, Allergan shall ensure that during the term of this CIA, it shall comply with the obligations set forth in this CIA.

## II.   TERM AND SCOPE OF THE CIA

A.  The effective date of this CIA shall be the date on which the final signatory executes this document (Effective Date).  The period of the compliance obligations assumed by Allergan under this CIA shall be five years from the Effective Date of this CIA, unless otherwise specified.  Each one-year period, beginning with the one-year period following the first day of the first calendar month following the Effective Date, shall be referred to as a "Reporting Period."

The certification shall include a description of the document(s) reviewed and approximately when the review was completed.  The documentation supporting this certification shall be available to OIG, upon request;

           d.  he or she has verified with appropriate personnel that, except as otherwise described in the applicable report, Allergan's promotional materials containing claims or information about Government Reimbursed Products and other materials and information intended to be disseminated outside Allergan have been reviewed by competent regulatory, medical, and/or legal personnel in accordance with applicable Policies and Procedures to ensure that legal, medical, and regulatory concerns are properly addressed and are elevated when appropriate, and that the materials and information when finally approved are in compliance with all applicable Federal health care program and FDA requirements.  If the applicable legal requirements have not changed, after the initial review of the documents listed above, only material changes to the documents must be reviewed by competent regulatory, medical, and/or legal personnel.  The certification shall include a description of the document(s) reviewed and approximately when the review was completed.  The documentation supporting this certification shall be available to OIG, upon request; and

           e. he or she has verified with appropriate personnel that Allergan's Call Plans for Government Reimbursed Products were reviewed at least once during the Reporting Period (consistent with Section III.B.3.j) and, for each product the Call Plans were found to be consistent with Allergan's policy objectives as referenced above in Section III.B.3.j.

      D.  <u>Designation of Information</u>.  Allergan shall clearly identify any portions of its submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Allergan shall refrain from identifying any information as exempt from disclosure if that information does not meet the criteria for exemption from disclosure under FOIA.

## VI.    NOTIFICATIONS AND SUBMISSION OF REPORTS

      Unless otherwise stated in writing after the Effective Date, all notifications and reports required under this CIA shall be submitted to the following entities:

Corporate Integrity Agreement
Allergan, Inc.

49

OIG:              Administrative and Civil Remedies Branch
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services
Cohen Building, Room 5527
330 Independence Avenue, S.W.
Washington, DC 20201
Telephone: 202.619.2078
Facsimile: 202.205.0604

Allergan:     Chief Compliance Officer
Allergan, Inc.
2525 Dupont Drive
P.O. Box 19534
Irvine, CA 92623
Telephone: 714.246.4500
Facsimile: 714.246.4971

Unless otherwise specified, all notifications and reports required by this CIA may be made by certified mail, overnight mail, hand delivery, or other means, provided that there is proof that such notification was received. For purposes of this requirement, internal facsimile confirmation sheets do not constitute proof of receipt. Upon request by OIG, Allergan may be required to provide OIG with an electronic copy of each notification or report required by this CIA in searchable portable document format (pdf), either instead of or in addition to, a paper copy.

## VII.   OIG INSPECTION, AUDIT, AND REVIEW RIGHTS

In addition to any other rights OIG may have by statute, regulation, or contract, OIG or its duly authorized representative(s) may examine or request copies of Allergan's books, records, and other documents and supporting materials and/or conduct on-site reviews of any of Allergan's locations for the purpose of verifying and evaluating: (a) Allergan's compliance with the terms of this CIA; and (b) Allergan's compliance with the requirements of the Federal health care programs in which it participates and with all applicable FDA requirements. The documentation described above shall be made available by Allergan to OIG or its duly authorized representative(s) at all reasonable times for inspection, audit, or reproduction. Furthermore, for purposes of this provision,

Corporate Integrity Agreement
Allergan, Inc.

OIG or its duly authorized representative(s) may interview any of Allergan's employees, contractors, or agents who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon between the individual and OIG.  Allergan shall assist OIG or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG's request.  Allergan's employees may elect to be interviewed with or without a representative of Allergan present.

## VIII.   DOCUMENT AND RECORD RETENTION

Allergan shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs, or to compliance with this CIA, for six years (or longer if otherwise required by law) from the Effective Date.

## IX.   DISCLOSURES

Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify Allergan prior to any release by OIG of information submitted by Allergan pursuant to its obligations under this CIA and identified upon submission by Allergan as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules.  With respect to such releases, Allergan shall have the rights set forth at 45 C.F.R. § 5.65(d).

## X.   BREACH AND DEFAULT PROVISIONS

Allergan is expected to fully and timely comply with all of its CIA obligations. The breach and default remedies available to the OIG under this Section X do not preempt or limit any actions that individual States may take against Allergan under applicable legal authorities or under any applicable settlement agreement or consent decree between the State and Allergan.

A.  Stipulated Penalties for Failure to Comply with Certain Obligations.  As a contractual remedy, Allergan and OIG hereby agree that failure to comply with certain obligations as set forth in this CIA may lead to the imposition of the following monetary penalties (hereinafter referred to as "Stipulated Penalties") in accordance with the following provisions.

Corporate Integrity Agreement
Allergan, Inc.

51

# CORPORATE INTEGRITY AGREEMENT
## BETWEEN THE
## OFFICE OF INSPECTOR GENERAL
### OF THE
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### AND
## BRISTOL-MYERS SQUIBB COMPANY

## I.  PREAMBLE

Bristol-Myers Squibb Company (BMS) hereby enters into this Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements) and with the statutes, regulations, and written directives of the Food and Drug Administration (FDA requirements). Contemporaneously with this CIA, BMS is entering into a Settlement Agreement with the United States. BMS will also enter into settlement agreements with various States (Related State Settlement Agreements) and BMS's agreement to this CIA is a condition precedent to those agreements.

Prior to the Effective Date, BMS voluntarily established a worldwide compliance program (Global Compliance Program) applicable to all BMS employees in its global operations, including its United States Pharmaceuticals Group (hereafter "U.S. Pharmaceuticals Group" or "the Group"). The BMS Global Compliance Program includes, at the global level, a Chief Compliance Officer, who has the authority to report directly to the Board of Directors and the CEO, and a Corporate Compliance Council. The Global Compliance Program also includes: i) a code of conduct applicable to all employees (the "Standards of Business Conduct and Ethics"); ii) written corporate policies that set forth BMS's highest level principles, which as represented by BMS, help ensure compliance with applicable laws and regulations and promote high ethical standards; iii) educational and training initiatives, including training for all BMS employees on the Standards of Business Conduct and Ethics; iv) a corporate policy that provides for the confidential disclosure of potential compliance violations, investigation of those potential violations, and appropriate disciplinary procedures; and v) a corporate compliance audit group.

Corporate Integrity Agreement
Bristol-Myers Squibb Company

1

competent legal counsel and have been found to be in compliance with the requirements of the Federal anti-kickback statute, the Prescription Drug Marketing Act, and other applicable laws and legal requirements. In addition, BMS's promotional materials containing claims or information about Government Reimbursed Products and other materials and information intended to be disseminated outside BMS have been reviewed by competent legal counsel in accordance with applicable Policies and Procedures to ensure that legal, medical, and regulatory concerns have been addressed and elevated when required, and that the materials and information when finally approved are in compliance with the requirements of the Federal anti-kickback statute, the Prescription Drug Marketing Act, and other applicable laws and legal requirements. If the applicable legal requirements have not changed, after the initial review of the documents listed above, only material changes to the documents must be reviewed by competent legal counsel. The certification shall include a description of the document(s) reviewed and approximately when the review was completed. The documentation supporting this certification shall be available to OIG, upon request;

6. BMS's call plans for those Government Reimbursed Products subject to the requirements of Section III.B.3.f were reviewed by U.S. Healthcare Law Compliance at least once during the Reporting Period (consistent with the requirements of Section III.B.3.f) and, for each such Government Reimbursed Product, the call plans were found to be consistent with BMS's policy objectives as referenced above in Section III.B.3.f; and

7. Each Implementation Report and Annual report shall include the certification set forth as Appendix E.

D. <u>Designation of Information</u>. BMS shall clearly identify any portions of its submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. BMS shall refrain from identifying any information as exempt from disclosure if that information does not meet the criteria for exemption from disclosure under FOIA.

## VI. NOTIFICATIONS AND SUBMISSION OF REPORTS

Unless otherwise stated in writing after the Effective Date, all notifications and reports required under this CIA shall be submitted to the following entities:

Corporate Integrity Agreement
Bristol-Myers Squibb Company

OIG:        Administrative and Civil Remedies Branch
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services
Cohen Building, Room 5527
330 Independence Avenue, S.W.
Washington, DC 20201
Telephone: 202.619.2078
Facsimile: 202.205.0604

BMS:        Chief Compliance Officer
Bristol-Myers Squibb Company
345 Park Avenue
New York, NY 10154-0037
Tel (212) 546-4000
Fax (212) 605-9449

Unless otherwise specified, all notifications and reports required by this CIA may be made by certified mail, overnight mail, hand delivery, or other means, provided that there is proof that such notification was received. For purposes of this requirement, internal facsimile confirmation sheets do not constitute proof of receipt.

## VII.  OIG INSPECTION, AUDIT, AND REVIEW RIGHTS

In addition to any other rights OIG may have by statute, regulation, or contract, OIG or its duly authorized representative(s) may examine or request copies of BMS's books, records, and other documents and supporting materials and/or conduct on-site reviews of any of BMS's locations for the purpose of verifying and evaluating: (a) BMS's compliance with the terms of this CIA; and (b) BMS's compliance with the requirements of the Federal health care programs in which it participates and with all applicable FDA requirements. The documentation described above shall be made available by BMS to OIG or its duly authorized representative(s) at all reasonable times for inspection, audit, or reproduction. Furthermore, for purposes of this provision, OIG or its duly authorized representative(s) may interview any of BMS's employees, contractors, or agents who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon

between the individual and OIG.  BMS shall assist OIG or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG's request.  BMS's employees may elect to be interviewed with or without a representative of BMS present.

## VIII.  DOCUMENT AND RECORD RETENTION

BMS shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs, or to compliance with this CIA, for six years (or longer if otherwise required by law) from the Effective Date.

## IX.  DISCLOSURES

Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify BMS prior to any release by OIG of information submitted by BMS pursuant to its obligations under this CIA and identified upon submission by BMS as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules.  With respect to such releases, BMS shall have the rights set forth at 45 C.F.R. § 5.65(d).

## X.  BREACH AND DEFAULT PROVISIONS

BMS is expected to fully and timely comply with all of its CIA obligations.

A. Stipulated Penalties for Failure to Comply with Certain Obligations.  As a contractual remedy, BMS and OIG hereby agree that failure to comply with certain obligations as set forth in this CIA may lead to the imposition of the following monetary penalties (hereinafter referred to as "Stipulated Penalties") in accordance with the following provisions.

1. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day BMS fails to establish and implement any of the following obligations as described in Section III:

a. a Chief Compliance Officer;

b. a CIA Compliance Committee;

Corporate Integrity Agreement
Bristol-Myers Squibb Company

42

# CORPORATE INTEGRITY AGREEMENT
### BETWEEN THE
### OFFICE OF INSPECTOR GENERAL
### OF THE
### DEPARTMENT OF HEALTH AND HUMAN SERVICES
### AND
### ELI LILLY AND COMPANY

## I.   PREAMBLE

Eli Lilly and Company (Lilly) hereby enters into this Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements) and with the statutes, regulations, and written directives of the Food and Drug Administration (FDA requirements).  Contemporaneously with this CIA, Lilly is entering into a Settlement Agreement with the United States.  Lilly will also enter into settlement agreements with various States (State Settlement Agreement and Release) and Lilly's agreement to this CIA is a condition precedent to those agreements.

Prior to the Effective Date of this CIA (as defined below), Lilly established a voluntary compliance program applicable to all Lilly employees (Compliance Program). Lilly's Compliance Program includes a Chief Compliance Officer who reports directly to the Board of Directors and the CEO, and a Compliance Committee.  The Compliance Program also includes a Code of Conduct (known as "The Red Book") applicable to all employees that is regularly reviewed and disseminated, written policies and procedures, educational and training initiatives, a Disclosure Program that allows for the confidential disclosure and investigation of potential compliance violations and appropriate disciplinary procedures, and regular monitoring and internal auditing procedures.

Lilly shall continue its Compliance Program throughout the term of this CIA and shall do so in accordance with the terms set forth below.  Lilly may modify its Compliance Program as appropriate, but, at a minimum, Lilly shall ensure that during the term of this CIA, it shall comply with the obligations set forth herein.

applicable legal requirements have not changed, after the initial review of the documents listed above, only material changes to the documents must be reviewed by competent regulatory, medical, and/or legal personnel.  The certification shall include a description of the document(s) reviewed and approximately when the review was completed.  The documentation supporting this certification shall be available to OIG, upon request; and

        e. Lilly's call plans for Government Reimbursed Products were reviewed at least once during the Reporting Period (consistent with Section III.B.3.g) and, for each product the call plans were found to be consistent with Lilly's policy objectives as referenced above in Section III.B.3.g.

     D.  <u>Designation of Information</u>.  Lilly shall clearly identify any portions of its submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Lilly shall refrain from identifying any information as exempt from disclosure if that information does not meet the criteria for exemption from disclosure under FOIA.

**VI.**    <u>NOTIFICATIONS AND SUBMISSION OF REPORTS</u>

    Unless otherwise stated in writing after the Effective Date, all notifications and reports required under this CIA shall be submitted to the following entities:

      <u>OIG</u>:        Administrative and Civil Remedies Branch
                    Office of Counsel to the Inspector General
                    Office of Inspector General
                    U.S. Department of Health and Human Services
                    Cohen Building, Room 5527
                    330 Independence Avenue, S.W.
                    Washington, DC  20201
                    Telephone:  202.619.2078
                    Facsimile:  202.205.0604

      <u>Lilly</u>:       Chief Compliance Officer
                    Eli Lilly and Company
                    Lilly Corporate Center, DC 1114
                    Indianapolis, IN  46285
                    Telephone:  317.276.9937

Corporate Integrity Agreement
Eli Lilly Company

Facsimile: 317.655.1921

Unless otherwise specified, all notifications and reports required by this CIA may be made by certified mail, overnight mail, hand delivery, or other means, provided that there is proof that such notification was received. For purposes of this requirement, internal facsimile confirmation sheets do not constitute proof of receipt. Upon request by OIG, Lilly may be required to provide OIG with an electronic copy of each notification or report required by this CIA in searchable portable document format (pdf), either instead of or in addition to, a paper copy.

## VII.   OIG INSPECTION, AUDIT, AND REVIEW RIGHTS

In addition to any other rights OIG may have by statute, regulation, or contract, OIG or its duly authorized representative(s) may examine or request copies of Lilly's books, records, and other documents and supporting materials and/or conduct on-site reviews of any of Lilly's locations for the purpose of verifying and evaluating: (a) Lilly's compliance with the terms of this CIA; and (b) Lilly's compliance with the requirements of the Federal health care programs in which it participates and with all applicable FDA requirements. The documentation described above shall be made available by Lilly to OIG or its duly authorized representative(s) at all reasonable times for inspection, audit, or reproduction. Furthermore, for purposes of this provision, OIG or its duly authorized representative(s) may interview any of Lilly's employees, contractors, or agents who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon between the individual and OIG. Lilly shall assist OIG or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG's request. Lilly's employees may elect to be interviewed with or without a representative of Lilly present.

## VIII.  DOCUMENT AND RECORD RETENTION

Lilly shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs, or to compliance with this CIA, for six years (or longer if otherwise required by law) from the Effective Date.

## IX.    DISCLOSURES

Corporate Integrity Agreement
Eli Lilly Company

39

Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify Lilly prior to any release by OIG of information submitted by Lilly pursuant to its obligations under this CIA and identified upon submission by Lilly as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules. With respect to such releases, Lilly shall have the rights set forth at 45 C.F.R. § 5.65(d).

## X.   BREACH AND DEFAULT PROVISIONS

Lilly is expected to fully and timely comply with all of its CIA obligations. The breach and default remedies available to the OIG under this Section X do not preempt or limit any actions that individual States may take against Lilly under applicable legal authorities or under any applicable settlement agreement or consent decree between the State and Lilly.

A.   Stipulated Penalties for Failure to Comply with Certain Obligations. As a contractual remedy, Lilly and OIG hereby agree that failure to comply with certain obligations as set forth in this CIA may lead to the imposition of the following monetary penalties (hereinafter referred to as "Stipulated Penalties") in accordance with the following provisions.

1. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day Lilly fails to establish, implement, or accomplish any of the following obligations as described in Section III:

> a. a Compliance Officer;
>
> b. a Compliance Committee;
>
> c. the resolution from the Committee of the Board;
>
> d. a written Code of Conduct;
>
> e. written Policies and Procedures;
>
> f. the training of Covered Persons and Relevant Covered Persons;
>
> g. a Disclosure Program;

Corporate Integrity Agreement
Eli Lilly Company

Exh. 3, Attach. D

## TAB 10

Any changes to the process by which Pfizer fulfills the requirements of Section III.F regarding Ineligible Persons.

(b)(4)

Pfizer Inc
2004 Corporate Integrity Agreement
Annual Report – Year 1
CONFIDENTIAL AND FOIA EXEMPT

Tab 10
1

OIG-000083

## TAB 11

The name, title, and responsibilities of any person who is determined to be an Ineligible Person under Section III.F; and the actions taken by Pfizer in response to the screening and removal obligations set forth in Section III.F.

### DOCUMENT(S)/INFORMATION INCLUDED                                              TAB

- Chart of Personnel Actions ..................................................................................................... 11A

Pfizer Inc
2004 Corporate Integrity Agreement
Annual Report – Year 1
CONFIDENTIAL AND FOIA EXEMPT

Tab 11
1

OIG-000085

# PFIZER INC.
# INELIGIBLE PERSONS

(b)(4)

---

Pfizer Inc
Corporate Integrity Agreement Annual Review
Annual Report
Review Dates: May 11, 2005 to May 10, 2006
Page 1

**CONFIDENTIAL AND FOIA EXEMPT**

# PFIZER INC
# INELIGIBLE PERSONS

(b)(4)

---

Pfizer Inc
Corporate Integrity Agreement Annual Review
Annual Report
Review Dates: May 11, 2006 to May 10, 2007
Page 1

**CONFIDENTIAL AND FOIA EXEMPT**

Exh. 3, Attach. E



Purdue Pharma L.P.

One Stamford Forum
Stamford, CT 06901-3431
www.purduepharma.com

**Attachment B**

**PROPOSED SUPPLEMENT TO 2008 ANNUAL CERTIFICATION**

June 18, 2009

CONFIDENTIAL AND FOIA EXEMPT

_Via E-mail and Overnight Mail_

Keshia B. Thompson, Esq.
Senior Counsel, Administrative & Civil Remedies Branch
U.S. Department of Health & Human Services
Office of Inspector General
Room 5527 - Cohen Building
330 Independence Ave., SW
Washington, DC 20201

Re: Purdue Pharma CIA
    Supplement to the Reporting Period 1 (RP1) Annual Report and Certification

Dear Keshia,

This letter is intended to supplement the Annual Report and Certification filed by Purdue Pharma (the Company) on September 25, 2008 with the Office of Inspector General (OIG) for RP1 (July 31, 2007-July 30, 2008). The reason for this supplement is to update the information in the previous filing with information that has recently come to the attention of the Company.

As you are aware, Purdue filed its annual report with the OIG on September 25, 2008. This report was filed to the best of Purdue's knowledge that it was in compliance with all requirements of the Corporate Integrity Agreement (CIA).[1]                          (b)(4)

                              (b)(4)

---

[1] _See_ Corporate Integrity Agreement Between the Office of the Inspector General, the Department of Health and Human Services and Purdue Pharma, L.P., Section V C.1.
[2] _Id._ at Section III K.

CONFIDENTIAL AND FOIA EXEMPT
DM Activities and Promotion Monitoring Program
Page 2 of 6

## Background



(b)(4)

*Dedicated to Physician and Patient*

CONFIDENTIAL AND FOIA EXEMPT
DM Activities and Promotion Monitoring Program
Page 3 of 6



(b)(4)

*Dedicated to Physician and Patient*

CONFIDENTIAL AND FOIA EXEMPT
DM Activities and Promotion Monitoring Program
Page 4 of 6



(b)(4)

*Dedicated to Physician and Patient*

CONFIDENTIAL AND FOIA EXEMPT
DM Activities and Promotion Monitoring Program
Page 5 of 6



(b)(4)

Dedicated to Physician and Patient

CONFIDENTIAL AND FOIA EXEMPT
DM Activities and Promotion Monitoring Program
Page 6 of 6



(b)(4)

Please be aware that I will be        (b)(6)           from June 19 – July 13, 2009.  In view of the importance of this matter, I will be reachable via email.  In the meantime, if you wish to discuss this matter while I am away, please contact Margaret Feltz        (b)(6) margaret.feltz@pharma.com) or LaDonna Steiner        (b)(6)        ladonna.steiner@pharma.com).

Sincerely,

Bert Weinstein
Vice President, Corporate Compliance
(203) 588-8288
bert.weinstein@pharma.com

6/18/2009



Exh. 3, Attach. F

*file*

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW

1227 25TH STREET, NW, SUITE 700

WASHINGTON, DC 20037-1175

202.861.0900

FAX: 202.296.2882

EBGLAW.COM

JOHN RAH
TEL: 202.861.1372
FAX: 202.296.2882
JRAH@EBGLAW.COM

March 31, 2006

**CONFIDENTIAL AND FOIA EXEMPT**

<u>**Via Overnight Mail**</u>

Nicole Hall
Senior Counsel
Office of Counsel to the Inspector General
United States Department of Health and Human Services
Gateway Tower West
15 West South Temple, Suite 890
Salt Lake City, UT 84101

       Re:  <u>Pfizer Inc</u>

Dear Nicole:

      On behalf of Pfizer Inc ("Pfizer" or the "Company"), we confirm the agreement that we reached with you during our March 14, 2006 telephone conversation regarding the scope of the Independent Review Organization ("IRO") reviews for the second Reporting Period of Pfizer's Corporate Integrity Agreement ("CIA"). As we discussed, our agreement regarding the scope of the IRO reviews was based upon the following:

(b)(4)

ATLANTA • CHICAGO • DALLAS • HOUSTON • LOS ANGELES • MIAMI
NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, DC

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY.

DC:577226v2

## EPSTEIN BECKER & GREEN, P.C.

March 31, 2006
Page 2



(b)(4)

DC:577226v2

## EPSTEIN BECKER & GREEN, P.C.

March 31, 2006
Page 3

(b)(4)

\*      \*      \*

We trust that the foregoing accurately reflects the substance of our telephone conversation and our understanding of the scope of the relevant Pfizer CIA IRO reviews. Please do not hesitate to contact us with any questions or comments.

Very truly yours,

John Rah

Cc:   Lisa Goldman
      Piyush Sharma
      Michael Diaco
      Annabel Nau
      Lynn Shapiro Snyder

DC:577226v2

## EPSTEIN BECKER & GREEN, P.C.

March 31, 2006
Page 4

Bcc:   Christopher Robinson
       Niteesha Gupte

DC:577226v2

OIG-003625



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
Office of Inspector General
Office of Counsel to the Inspector General

Gateway Tower West
15 West South Temple, Suite 890
Salt Lake City, Utah 84101

(801) 524-3328 Direct
(801) 524-3489 Fax
e-mail: Nicole.Hall@oig.hhs.gov

April 18, 2006

John Rah
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Suite 700
Washington, DC 20037

     Re:   <u>Pfizer</u>

Dear Mr. Rah:

We received your letter dated March 31, 2006, which confirms our discussion on March 14, 2006, regarding the scope of the Independent Review Organization (IRO) reviews for Pfizer Inc. (Pfizer) for purposes of the second annual reporting period under the Pfizer Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG).

Your March 31st letter accurately summarizes our agreement on the scope of the IRO reviews for the second annual reporting period of the Pfizer CIA. However, please be aware that the OIG may wish to re-visit the scope of the BETSY Transaction Engagement for purposes of the third annual reporting period following our review of Pfizer's second annual report.

If you have any questions regarding this letter, please contact me at (801) 524-3328.

          Sincerely,

          Nicole C. Hall

          Nicole C. Hall
          Senior Counsel

Exh. 3, Attach. G

 **DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of Inspector General
Office of Counsel to the Inspector General

Cohen Building- Room 5527
330 Independence Ave., S.W.
Washington, D.C. 20201

Greg A. Jones
Administrative and Civil Remedies Branch

202/205-9349 - tel
202/205-0604 - fax
Gjones@oig.hhs.gov

November 19, 2003

**VIA FACSIMILE (202) 296-2882**
**AND FIRST CLASS MAIL**

John S. Rah, Esq.
Epstein Becker & Green, P.C.
Attorneys At Law
1227 25th Street, N.W, Suite 700
Washington, D.C. 20037-1175

      Re:   **Pfizer Inc - 1) Review of the Engagement Procedures, and
              2) Clarification of FOIA Policy**

Dear John:

We received and reviewed the Independent Review Organization's Engagement
Procedures submitted pursuant to the Corporate Integrity Agreement (CIA) executed
between Pfizer Inc (Pfizer) and the Office of Inspector General (OIG) on
October 24, 2002. This letter acknowledges our agreement to the procedures. However,
we reserve the right to request additional procedures and information once we receive
Pfizer's Annual Report.

Freedom of Information Act (FOIA) Requests
Section V.D, Designation of Information, of the CIA requires that Pfizer shall clearly
identify any materials that it believes are exempt from disclosure under FOIA. Section
V.D also states that Pfizer shall "refrain from identifying any information as exempt from
disclosure if that information does not meet the criteria for exemption from disclosure
under FOIA."

To date almost all of the documents submitted pursuant to the CIA have been stamped
"FOIA exempt." As a result we would like to advise you that in the event that Pfizer's
CIA materials are requested under FOIA, such materials may not be fully exempt as you
have noted. It is the OIG's policy to review all documents, and to disclose to requesting
parties, all information that is not exempt based on FOIA guidelines. Therefore, you
should not assume that all of Pfizer's reports and other documents submitted pursuant to

CONFIDENTIAL AND FOIA EXEMPT

Mr. John S. Rah
November 19, 2003
Page 2

the CIA will be exempt from a FOIA request.

Please feel free to contact me if you have any questions regarding this letter or any of
Pfizer's ongoing compliance obligations.

Sincerely,

Greg A. Jones
Program Analyst

cc:     Douglas Lankler
        Lynn Shapiro Snyder
        Mary Riordan

CONFIDENTIAL AND FOIA EXEMPT

Exh. 3, Attach. H

**TAB 7**

Pfizer's response and corrective action plan(s) related to any issues raised by the reports prepared pursuant to Section III.D.

Pfizer will review the IRO's findings and recommendations, and any other observations, and provide a response to the OIG, as necessary, under separate cover, at a later date.

Pfizer Inc
2004 Corporate Integrity Agreement
Annual Report – Year 1
CONFIDENTIAL AND FOIA EXEMPT

Tab 7
1

OIG-000066

# PFIZER INC
## RESPONSE AND CORRECT ACTION PLAN(S)

Pfizer will review the Internal Review Organizations (IROs) findings and recommendations, and any other observations, and provide a response to the OIG, as necessary, under separate cover, at a later date pursuant to Section III.D.

CONFIDENTIAL AND FOIA EXEMPT

## RESPONSE TO INDEPENDENT REVIEW ORGANIZATION FINDINGS AND RECOMMENDATIONS

Pfizer will review the Internal Review Organizations (IROs) findings and recommendations, and any other observations, and provide a response to the OIG, as necessary, under separate cover, at a later date pursuant to Section III.D.

---

Pfizer Inc
Corporate Integrity Agreement Annual Review
Annual Report
Review Dates: May 11, 2006 to May 10, 2007
Page 1

**CONFIDENTIAL AND FOIA EXEMPT**

## RESPONSE TO INDEPENDENT REVIEW ORGANIZATION
## FINDINGS AND RECOMMENDATIONS

Pfizer will review the Internal Review Organizations (IROs) findings and recommendations, and any other observations, and provide a response to the OIG, as necessary, in the IRO reports themselves and/or under separate cover, at a later date pursuant to Section III.D.

Pfizer Inc
Corporate Integrity Agreement Annual Review
Annual Report
Review Dates: May 11, 2007 to May 10, 2008
Page 1                                                    **CONFIDENTIAL AND FOIA EXEMPT**

OIG-005864

## RESPONSE TO INDEPENDENT REVIEW ORGANIZATION
## FINDINGS AND RECOMMENDATIONS

Pfizer will review the Internal Review Organization's (IRO's) findings and recommendations, and any other observations, and provide a response to the OIG, as necessary, in the IRO reports themselves and/or under separate cover, at a later date pursuant to Section III.D.

Pfizer Inc
Corporate Integrity Agreement Annual Review
Annual Report
Review Dates: May 11, 2008 to May 10, 2009
Page 1                                          CONFIDENTIAL AND FOIA EXEMPT

OIG-007893